UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-24756-CIV-SEITZ/TURNOFF

ROBERT STEIN,

        Plaintiff,

vs.

MARQUIS YACHTS, LLC and
CATERPILLAR, INC.,

        Defendants.
_____/

## ORDER DENYING MOTION TO AMEND

THIS MATTER is before the Court on Plaintiff's Motion for Leave to File First Amended Complaint [DE-20], which both Defendants oppose. This case arises from Plaintiff's purchase of a yacht which quickly developed mechanical and other problems. Defendant Marquis Yachts, LLC (Marquis) manufactured Plaintiff's yacht and Defendant Caterpillar, Inc. (Caterpillar) manufactured the yacht's engines. By prior order, the Court dismissed all claims against both Defendants except for a breach of express warranty claim against each. Plaintiff now seeks to amend his complaint to add a count against each Defendant for breach of the Magnuson-Moss Warranty Act. Defendants maintain that the motion must be denied because any such amendment would be futile. Because there is a presumption that a statute does not apply extraterritorially and there is nothing in the language of the statute indicating that Congress intended the Magnuson-Moss Warranty Act to apply to exports, the Motion to Amend is denied as futile.

I.      FACTS ALLEGED IN THE PROPOSED AMENDED COMPLAINT[1]

Plaintiff is a resident of Toronto, Ontario, Canada. On April 19, 2013, in Toronto, Plaintiff purchased a new Carver 54' Voyager yacht (the Yacht) for $902,405.00.[2] The Yacht was manufactured by Marquis and the engines were manufactured by Caterpillar. In June 2013, Plaintiff took delivery of the Yacht in Ontario, without the formal delivery process involving inspection and instruction. The engines on the Yacht began experiencing problems even before Plaintiff took delivery and the problems continued after delivery. Additionally, there were problems with non-mechanical parts of the Yacht.[3]

On July 16, 2013, Caterpillar inspected the engines and determined that parts were needed to fix the problems. The engine problems were supposedly resolved as of July 29, 2013. Also, on July 29, 2013, Plaintiff notified Marquis' distributor that he planned to drive the Yacht from Ontario to Florida in September 2013 and needed everything fixed before then. The distributor assured Plaintiff that everything would be fixed before then. On July 31, 2013 and again on August 9, 2013, Plaintiff notified Marquis of numerous non-engine problems with the Yacht. Marquis assured Plaintiff that all repairs would be timely made.

---

[1] The facts do not differ significantly, if at all, from those alleged in Plaintiff's original complaint. The real difference is the addition of the Magnuson-Moss Warranty Act claims.

[2] While not alleged in the complaint, the parties do not dispute that the Yacht was purchased from a third-party, Crate Marine Sales, Ltd., with whom Plaintiff had a written purchase contract, and that Plaintiff has a pending action in Ontario against Crate Marine Sales, Ltd.

[3] The proposed amended complaint contains lengthy lists of those problems. See DE-1 at ¶¶ 23-25, 28. Other than the fact that the problems were non-mechanical, the specific problems are not relevant to the pending motions.

Given Marquis' and Caterpillar's assurances that the engines had been repaired and the Yacht was in proper working order, on October 1, 2013, Plaintiff began his trip from Ontario to Florida on the Yacht. In early October, during the trip, the engines failed off the coast of New York. After three days of repairs, the trip to Florida resumed. Soon afterwards, an engine sustained a major oil leak and Plaintiff was forced to dock for repairs in North Carolina. The repairs took over a week and resulted in significant out-of-pocket expenses for Plaintiff. The Yacht reached Miami, Florida on October 30, 2013, despite continued engine problems. Significant repairs were needed and, on November 19, 2013, the Yacht was rendered inoperable. Marquis hired a company to perform some of the repair work. Various mechanics who have inspected the Yacht have declared it unsafe and unseaworthy. Despite several requests, Marquis refused to refund the full purchase price to Plaintiff. Ultimately, Plaintiff received a $600,000.00 credit from a third-party toward the purchase of a new boat in exchange for the Yacht.

Counts I and II of the proposed amended complaint are the express warranty claims against Marquis and Caterpillar, respectively.[4] Counts III and IV of the proposed amended complaint are the new Magnuson-Moss Warranty Act claims against Marquis and Caterpillar, respectively.

## II. Discussion

While generally leave to amend should be freely given, a motion to amend may be denied if amendment would be futile. *Maynard v. Board of Regents of the Division of Universities of*

---

[4]Count I of the proposed amended complaint is Count II of the original complaint against Marquis and Count II of the proposed amended complaint is Count VII of the original complaint against Caterpillar. By prior order, the Court denied Caterpillar's motion to dismiss Count VII. Marquis never challenged Count II.

3

*the Florida Department of Education*, 342 F.3d 1281, 1287 (11th Cir. 2003). Marquis and Caterpillar both oppose amendment because Plaintiff's proposed amendment would be futile. Marquis asserts that Ontario law, not United States law, applies to Plaintiff's warranty claims and that the Magnuson-Moss Warranty Act does not apply to warranties that arise outside of the United States. Caterpillar also asserts that Ontario law applies, foreclosing the application of the Magnuson-Moss Warranty Act (the Act). Caterpillar also maintains that the Act does not apply to the claims against it because Caterpillar's engines were not "distributed in commerce," as required by the Act, and, if Ontario law does not apply, general maritime law would preempt the Act.

The Act applies to consumer products which are "distributed in commerce." 15 U.S.C. § 2301(1). Under the Act, the "term 'distributed in commerce' means sold in commerce, introduced or delivered for introduction into commerce, or held for sale or distribution after introduction into commerce." 15 U.S.C. § 2301(13). The term "commerce" means:

> trade, traffic, commerce, or transportation –
>
> > (A) between a place in a State and any place outside thereof,
> >
> > (B) or which affects trade, traffic, commerce, or transportation described in subparagraph (A).

15 U.S.C. § 2301(14). The law is not settled as to whether the Act applies to consumer goods manufactured in the United States but exported to and sold in another country, as is the case here.

The Federal Trade Commission has issued regulations relating to the Act, one of which specifically addresses the term "distributed in commerce:"

> The Act covers written warranties on consumer products "distributed in commerce" as that term is defined in section 101(3). Thus, by its terms the Act arguably applies to

4

> products exported to foreign jurisdictions. However, the public interest would not be served by the use of Commission resources to enforce the Act with respect to such products. Moreover, the legislative intent to apply the requirements of the Act to such products is not sufficiently clear to justify such an extraordinary result. The Commission does not contemplate the enforcement of the Act with respect to consumer products exported to foreign jurisdictions. Products exported for sale at military post exchanges remain subject to the same enforcement standards as products sold within the United States, its territories and possessions.

16 C.F.R. § 700.1(i). Thus, while the agency tasked with enforcing the Act has found the language of the Act might encompass goods exported to another country, it has also found that the statutory language is too ambiguous to justify applying the Act extraterritorially.

This conclusion is supported by the statutory rule of construction that there is a presumption that Congress did not intend for a statute to apply extraterritorially unless a contrary intent clearly appears. *See Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010); *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) *superceded by statute on other grounds*. In *Arabian American Oil*, the Court stated that "unless there is the affirmative intention of the Congress clearly expressed [to give a statute extraterritorial effect], we must presume [the legislation] is primarily concerned with domestic conditions." 561 U.S. at 248 (internal citation and quotation marks omitted). Looking at statutory language, virtually identical to the language in the Act, of "affecting commerce" and "between a State and any place outside thereof," the *Arabian American Oil* Court found that the statutory language was ambiguous and that no other statute using similar language had been given extraterritorial effect. *Id.* at 249-50.

While Plaintiff has submitted a decision from this district, *Barnext Offshore Ltd. v. Ferretti Group USA, Inc.*, Case No. 10-CV-23869-CMA, May 16, 2011, that found that the Act does apply to exports, that decision did not address the presumption against the extraterritorial

affect of a statute. On the other hand, another district court that did consider this presumption found that the Act does not apply to goods exported from the United States. *See In re Toyaota Motor Corp.*, 785 F. Supp. 2d 883, 915 (C.D. Cal. 2011). Given the presumption and the ambiguity of the Act's language, it is not clear that Congress intended the Act to apply to goods exported and sold in foreign countries. Consequently, because Congress must express a clear intent to overcome the presumption and there is none expressed in the Act, Plaintiff's proposed amendment is futile. Accordingly, it is

ORDERED that Plaintiff's Motion for Leave to File First Amended Complaint [DE-20] is DENIED.

DONE AND ORDERED in Miami, Florida, this 26 day of May, 2015.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Honorable William C. Turnoff
All Counsel of Record